**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
GARY LABARBERA, et al.,

                              Plaintiffs,                          **REPORT AND**
                                                                   **RECOMMENDATION**

          - against -                                              CV 07-1731 (DLI) (JO)

J&A CONCRETE CORP.,

                              Defendant.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

          Gary LaBarbera and Frank Finkel, as trustees of the Local 282 Welfare, Pension, Annuity,

Job Training and Vacation Sick Leave Trust Funds (the "Funds"), commenced this action on

April 26, 2007 against defendant J&A Concrete Corp. ("J&A") seeking certain relief associated

with the defendant's alleged failure to make required contributions to the Funds.  Docket Entry

("DE") 1 (Complaint).  J&A never responded to the Complaint, and the plaintiffs therefore

moved for default judgment.  DE 3.  The Honorable Dora L. Irizarry, United States District

Judge, granted the motion and referred the matter to me for a report and recommendation on

damages and attorneys' fees.  I set a deadline for the plaintiffs to submit any additional materials

they wished me to consider in support of their request for relief, and have considered all such

submissions, including one submitted well after the relevant deadline.  I now make my report

and, for the reasons set forth below, respectfully recommend that the court award the plaintiffs a

total of $11,827.62 (consisting of no award of unpaid contributions; $421.16 in interest on late-

paid contributions; $6,013.26 in "additional" (liquidated) damages; $4,930.45 in reasonable

attorneys' fees; and $462.75 in other litigation costs), order J&A to submit to an audit of its

books and records, and deny the plaintiffs' request for a permanent injunction.

I.       Background

The Funds are multi-employer trusts established for the benefit of employees in the

building material contractors industry through an Agreement and Declaration of Trust (the "Trust

Agreement") entered into by Local Union No. 282 of the International Brotherhood of Teamsters

(the "Union") and various industry employers.  Complaint ¶ 2; DE 7 (Supplemental Affirmation

[of plaintiffs' counsel] in Support of Plaintiffs' Claim for Damages) ("Supp. Aff.") Ex. A (partial

copy of Trust Agreement).  The Trust Agreement requires J&A to contribute to the Funds – and

to provide regular written reports upon which contribution amounts are based – according to

rates and schedules set forth in the collective bargaining agreement to which J&A is a party.  *Id.*

Art. IX § 1(b)-(c).  J&A entered into such an agreement with the Union, effective 2002 through

2008 (the "CBA").  Complaint ¶ 8; DE 3 (including the plaintiffs' Motion for Default Judgment

and their counsel's Affirmation in Support of that motion ("Aff.")) Ex. C (partial copy of CBA).[1]

By the CBA's terms, however, any party employer who engages in work as a "High-Rise

Contractor" is covered for that work by a different agreement – the Local 282 High-Rise

Agreement (the "High-Rise Agreement"), *see* Aff. Ex. F (partial copy of High-Rise Agreement) –

the provisions of which the CBA incorporates by reference.  CBA ¶ 28.  Pursuant to the High-

Rise Agreement, J&A was obliged to make contributions to the Funds in specified amounts no

later than the thirtieth day of the month following the month in which its employees completed

---

[1]  The original CBA was effective from July 1, 2002 through June 30, 2005.  *See* CBA at 1.
Apparently on or about June 7, 2006, J&A entered into a "Memorandum of Agreement" that
superceded the CBA, but incorporated all of the CBA's terms subject to certain amendments.  *See*
Aff. Ex. B (copy of Memorandum and Agreement stamped "Received" on June 7, 2006) ("CBA
Renewal Agreement").  The copy of the CBA Renewal Agreement provided by the plaintiffs –
which bears the signature of J&A's Vice President – is not dated, but is expressly retroactive to
July 1, 2005 and remains in effect to June 30, 2008.  *See* CBA Renewal Agreement at 1-2.

the high-rise work for which contributions were owed.  High-Rise Agreement § 16 A-D, F, G.

Moreover, if J&A failed to make contributions according to the agreed-upon schedule, it would

be liable for all of the remedies set forth in section 1132(g)(2) of the Employee Retirement

Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"), in addition to those

contemplated by the Trust Agreement.  High-Rise Agreement § 16 G, H.[2]

The plaintiffs filed the instant action on April 26, 2007, alleging that J&A failed to make

timely contributions to one or more of the Funds for work performed during the months of

October 2006 through January 2007, and thereby violated the CBA, the High-Rise Agreement,

and the Trust Agreement, as well as ERISA.  Complaint ¶¶ 9, 15.  In some cases the plaintiffs

acknowledge that J&A made the required contributions but allege it was delinquent in doing so,

while in other cases they claim that J&A made no contributions at all.  Aff. ¶¶ 22-23, 30-31, 33.

The plaintiffs served the Complaint on J&A on April 30, 2007.  J&A never responded.  Aff. Ex.

A.  On May 31, 2007, the plaintiffs moved for a default judgment.  DE 3.  The Clerk noted the

defendant's default the following day, at which point Judge Irizarry entered default judgment

against J&A and referred the matter to me for a report and recommendation on damages and

attorneys' fees.  Order dated June 1, 2007.

Upon receiving the referral, I afforded the plaintiffs an opportunity to submit, no later

than June 26, 2007, any additional written materials in support of their request for relief that they

---

[2]  The remedies provided for in the Trust Agreement include all of those found in section
1132(g)(2) of ERISA – interest on unpaid or delinquent contributions, attorneys' fees, the greater
of interest charged on unpaid contributions or additional damages in the amount of twenty
percent of unpaid contributions, costs, and injunctive relief.  Trust Agreement Art. IX § 3; 29
U.S.C. § 1132(g)(2); *see also* 29 U.S.C. § 1132(a)(3) (a fiduciary is empowered to bring an
action for injunctive relief under ERISA).

wished me to consider.  Order dated June 4, 2007.  They allowed that deadline to pass, and it was not until more than two months later, on August 29, 2007, that the plaintiffs filed a belated request for an extension.  DE 5.  I granted that application and the plaintiffs thereafter amended their request in two ways:  first, they acknowledged certain payments that J&A made after the filing of the default motion; second, they added a request for an award based on unpaid contributions to the Funds that J&A had not previously owed but that came due (and remained unpaid) while the motion was pending.  *See* DE 7.  The plaintiffs now seek a total monetary award of $31,030.60, comprised of $12,719.46 in unpaid contributions; $773.39 in interest on unpaid or late-paid contributions; $8,557.16 in additional damages; $8,027.84 in attorneys' fees; and $952.75 in other litigation costs; they also seek certain injunctive relief.  *Id.*

II.     Discussion

     A.     Applicable Law

          1.     Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); Fed. R. Civ. P. 8(b)(6).  The court must conduct an inquiry sufficient to establish damages to a "reasonable certainty."  *Credit Lyonnais*, 183 F.3d at 155 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing.  *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155.

The plaintiffs have submitted the following evidence, in addition to two affidavits from their counsel: copies of the pertinent provisions of the parties' various contractual agreements; remittance reports submitted by J&A for high-rise work completed by one of its employees during the months of October 2006 and November 2006; and a letter from the Union to J&A indicating that the employee for whom J&A submitted remittance reports was engaged in high-rise work. The plaintiffs have had ample opportunity to put additional information before me but have apparently decided not to do so. Upon this record, I have declined to convene an evidentiary hearing and make the instant report and recommendations on the basis of the submitted documents. *See Action S.A.*, 951 F.2d at 508; *Transatlantic Marine Claims Agency*, 109 F.3d at 111.

2. ERISA

ERISA is a comprehensive legislative scheme that governs the administration of employee benefit funds in the interest of protecting employees. *HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (citing *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007-08 (2d Cir. 1997)). It does not require employers to provide any particular benefits; rather, once an employer elects to provide benefits, ERISA regulates the terms of administration. *Id.* Employers obligated to make contributions within the meaning of the statute must do so in accordance with the relevant multi-employer plan or collective bargaining agreement. *See* 29 U.S.C. § 1145; *Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (duty to pay benefits must spring from a source other than ERISA) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988)). The statute's overarching purpose – to protect fund beneficiaries'

rights – is equitable, and the court therefore enjoys considerable discretion to fashion appropriate relief where a plaintiff successfully proves a violation. *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984); *see* 29 U.S.C. § 1001 (congressional findings that, among other things, safeguards must be provided with respect to establishment, operation, and administration of employee benefit plans to protect the interests of employees and their beneficiaries).

The statute provides that a fiduciary who prevails on a claim to enforce a plan under 29 U.S.C. § 1145 "shall" recover any unpaid contributions, interest on the unpaid contributions, and an additional amount equal to the greater of the interest or additional damages up to twenty percent of the unpaid contributions, as well as reasonable attorneys' fees and other litigation costs. 29 U.S.C. § 1132(g)(2). A fiduciary may also move to enjoin future violations of a plan, 29 U.S.C. § 1132(a)(3), and the court shall award equitable relief in appropriate circumstances. *Id.* § 1132(g)(2)(E).[3] I discuss each such component of the potential relief below.

B.    Damages

1.    Unpaid Contributions

In their Complaint, the plaintiffs asked to recover unpaid contributions and "delinquency charges" for the period from October 2006 through January 2007, but did not specify the specific months in which J&A allegedly failed to make contributions, as opposed to those for which its contributions were alleged to have been paid late. Complaint ¶¶ 9-10, 15.[4] In any event, the

---

[3]  The Complaint does not specifically allege that the plaintiffs are the Funds' fiduciaries, but as trustees they owe a fiduciary duty to the Funds' beneficiaries. *See* Black's Law Dictionary 1553 (8th ed. 2004) (defining "trustee" as one who "owes a fiduciary duty to [the trust] beneficiary"). The plaintiffs are therefore fiduciaries within the meaning of ERISA and are empowered to bring the instant action. *See* 29 U.S.C. § 1132(a)(3); *see also id.* § 1002(21)(a) & (14)(a).

[4]  The plaintiffs later provided that information in their default motion papers. *See* Aff. ¶¶ 19-20.

plaintiffs now acknowledge that J&A has since belatedly made the required contributions for all of the months cited in the Complaint, as well as all of the required contributions for March 2007 (for which the plaintiffs sought recovery for the first time in their default motion papers). Aff. ¶¶ 22, 23, 31; Supp. Aff. ¶¶ 20, 21. Accordingly, the court should not include any award of unpaid contributions for the period alleged in the Complaint, or for March 2007. As discussed below, however, that recommendation does not end the matter.

When the plaintiffs requested leave to submit evidence in support of their damages request after the deadline I originally set, they asserted that their intent was to *reduce* the amount of damages at issue by acknowledging payments that J&A made after the start of litigation. *See* DE 5. When they later submitted their papers, the plaintiffs did indeed acknowledge such payments, but they also added new allegations about periods not at issue in their original Complaint – thus marking the second time that the plaintiffs used papers submitted in support of their default motion to seek damages for periods not at issue in their original Complaint. Specifically, they alleged that J&A was late in making contributions to the Funds for April 2007, and made no contributions at all for May and June of that year. Supp. Aff. ¶¶ 9-10, 17-18. The plaintiffs did not provide those allegations as a matter of idle curiosity – they sought, once again, to include such late and unpaid contributions in their calculation of damages. By doing so, they did not reduce the amount of damages they sought; to the contrary, they increased their request for damages by a considerable margin. *Compare* Complaint ¶¶ 15, 26f (seeking damages of $15,803.18 plus reasonable attorneys' fees) *with* Aff. ("Statement for Judgment") (seeking total monetary award of $23,967.10, apparently including $4,527.84 in attorneys' fees) *with* Supp. Aff. ¶ 24 (seeking total monetary award of $31,030.60, including $8,027.84 in fees).

The Federal Rules of Civil Procedure generally prohibit a court from ordering a defaulting defendant to pay damages beyond those demanded in the Complaint. Fed. R. Civ. P. 54(c); *see Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assoc., Inc.*, 2007 WL 4125453, at *5 (E.D.N.Y. Nov. 16, 2007) (citing *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993)). The purpose of the rule is to allow a defendant to make an informed decision, based on the relief requested in the original pleading, as to "'whether to expend the time, effort, and money necessary to defend the action.'" *Id.* (citing *King v. STL Consulting, LLC.*, Slip Copy, 2006 WL 3335115, at *4 (E.D.N.Y. Oct. 3, 2006) (quoting 10 Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2663 (1998))). However, where the purpose of the rule is achieved and the defaulting defendant does have sufficient notice, Rule 54(c) is not an absolute bar to the award of damages that accrue during the pendency of an action. *King*, 2006 WL 3335115, at *5 (citing *Fustok v. Conticommodity Serv., Inc.*, 122 F.R.D. 151, 157 (S.D.N.Y. 1988)). Thus, when a defendant is on notice that a default judgment could exceed the amount requested in the complaint, additional damages may be awarded. *Id.* (awarding damages that accrued during pendency of ERISA default action); *Trustees of the Plumbers and Pipefitters National Pension Fund*, 2007 WL 4125453, at *6 (same); *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. May 25, 2005) (same).

Here, pursuant to the CBA Renewal Agreement, J&A remains under a continuing obligation to contribute to the Funds, and the Complaint specifically asks that the court take account of additional sums that come due during the course of the litigation. Complaint ¶ 21 (served on J&A on April 30, 2007, *see* Aff. Ex. A). Moreover, the plaintiffs' final submission in

support of their default motion put J&A on notice of the precise amount they now request.  Supp. Aff. (served on J&A on September 6, 2007, *see* DE 8).  For those reasons, and in the interests of judicial economy, I respectfully recommend that the court consider the plaintiffs' request for relief based on late and unpaid contributions for the period from March to June of 2007.  As explained below, however, I further recommend that the court award no such damages because the plaintiffs have failed, despite ample opportunity, to submit sufficient evidence in support of their request for relief.

Although the plaintiffs have not explicitly alleged that J&A is an "employer" within the meaning of ERISA, and therefore subject to its contribution requirements, the record clearly establishes that fact.  *See* Aff. Ex. E (including remittance reports J&A submitted to the Funds for hours worked by one of its employees during the months of October 2006 ("October Report") and November 2006 ("November Report")).  J&A's default also establishes the truth of the plaintiffs' allegation that J&A was obliged under a series of contracts to make certain contributions to the Funds.  Complaint ¶ 8.  The default also establishes, for purposes of liability, that J&A failed to submit certain required contributions.  Complaint ¶¶ 9-10, 15.

What J&A's default does not establish, however, is any liability with respect to contributions it may have owed for the months of March through June of 2007.  The Complaint contains no allegations about those contributions, and J&A has therefore admitted nothing about them by failing to file an answer.  Moreover, even if liability as to those months was established by virtue of the default, the plaintiffs would still have an obligation to prove to a reasonable certainty the amount of damages to which they are entitled.  This they have not done.

In seeking to prove such damages, the plaintiffs rely on a provision in the Trust Agreement that authorizes them to calculate unpaid contributions for any month in which J&A fails to submit remittance reports by resort to a mathematical formula based on earlier reports. Specifically, the agreement allows the plaintiffs to review the twelve most recent reports that J&A did submit, select the one with the largest number of reported hours, add ten percent to that number, and calculate the outstanding contributions on the basis of the resulting number. *See* Trust Agreement Art. IX § 1(e) (the "Trust Agreement Penalty Provision"). Using J&A's remittance report of October 6, 2006 – which, of the two monthly reports provided by the plaintiffs, records the greater number of hours – and the applicable contribution rate for each Fund as set out in the High-Rise Agreement, the plaintiffs arrive at a total of $12,719.46 in unpaid contributions for the months of May 2007 and June 2007. *See* October Report; November Report; Supp. Aff. ¶¶ 12-16; High-Rise Agreement § 16 A, B, D, & F.[5] I have no quarrel with the plaintiffs' calculations; rather, I question whether they may properly invoke the Trust Agreement Penalty Provision on the facts before the court. By its explicit terms, the Trust Agreement Penalty Provision is triggered only when an employer fails to submit the required reports "within twenty ... days of *written demand*." Trust Agreement Art. IX § 1(e) (emphasis added). The record does not establish that the plaintiffs made such a written demand with respect to the months for which it now seeks to recover damages.

_____

[5] Those rates are as follows: for the Welfare Trust Fund, $8.95 per hour; for the Pension Trust Fund, $7.00 per hour; for the Annuity Trust Fund, $8.5025 per hour; and for the Job Training Trust Fund, $0.15 per hour. *Id.* The plaintiffs do not seek to recover for unpaid contributions, if any, to the Vacation Sick Leave Trust Fund.

To be sure, the record does disclose that on September 22, 2006, the Union sent a written demand to J&A asking that the company submit "Highrise remittance forms" for a single employee "as soon as possible." Aff. Ex. D. Of lesser value (because the default does nothing to establish facts for purposes of calculating damages) is the Complaint's allegation that as of the filing (April 26, 2007), J&A had "ignored Plaintiffs' continuing demands for payment of all contributions due and owing." Complaint ¶ 20; *see also id*. ¶¶ 10, 13, 18 (alleging that J&A had not made contributions that were "duly demanded"). But nothing in the record suggests, much less establishes, that the plaintiffs ever made a written demand that J&A make contributions for the months of May and June of 2007. As a result, there is no basis on which the court can conclude that the Trust Agreement Penalty Provision applies. And because the plaintiffs offer no other basis for calculating their damages – or even for concluding that there were any damages in those months – I must recommend that the court award no damages for unpaid contributions.

Of course, the plaintiffs are forced to rely on the Trust Agreement Penalty Provision precisely because J&A has not submitted the required reports, and it is patent that they should not be penalized for the consequences of J&A's default. I do not propose that they should be. I merely recommend that the court not excuse the plaintiffs from taking the steps necessary – and reasonably available to them – to prove their damages. If the plaintiffs have in fact made a written demand to J&A for the months now at issue, they have had repeated opportunities to establish that fact and thereby take advantage of a generous formula for establishing their damages, and the outcome I recommend is entirely attributable to their own failure to act rather than to the defendant's default. On the other hand, if they have never made such a written demand, then they are not entitled to ask the court to rely on the Trust Agreement Penalty

Provision – again, not by reason of the default, but exclusively because of their own failure to act. Moreover, the outcome I recommend does not mean that the plaintiffs can never recover the contributions actually owed – as opposed to the amount derived from the formula in the Trust Agreement Penalty Provision – because I also recommend that the court order J&A to submit to an audit. *See* Part C, *infra*. The latter relief, if ordered, will put the plaintiffs in a position to demand from J&A the contributions it actually owes (if any) for May and June of 2007.

        2.    <u>Interest</u>

The plaintiffs are entitled to interest on the unpaid and delinquent contributions they have proved. ERISA provides that such interest should be calculated using the rate in the relevant benefit plan or, if none, the rate prescribed by 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2). An October 29, 2003 amendment to the Trust Agreement sets the applicable rate for the instant claims at eighteen percent per year, applied from the first day of the month when the contributions were due to the day on which payments were made. *See* Aff. ¶ 21 & Ex. H. As explained below, I conclude that the plaintiffs have failed to establish that they are entitled to any interest for the months of May 2007 and June 2007, but they have – barely – established that they are entitled to $421.16 in interest on late-paid contributions for three earlier months.

The plaintiffs seek the following amounts as interest on late or unpaid contributions: $278.90 for contributions for December 2006 (paid late on June 6, 2007); $78.06 for contributions for March 2007 (same); $64.20 for contributions for April 2007 (paid late on June 27, 2007); $220.14 and $132.09 for contributions that remain unpaid for, respectively, May and June of 2007. Supp. Aff. ¶¶ 10, 17-18, 20-21. As discussed above, I conclude the plaintiffs have not established the amount of unpaid contributions for May and June of 2007 to a reasonable

certainty. Having done so, I must also conclude that they have not established that they are entitled to any interest relating to such unpaid contributions, and must therefore recommend that the court deny those portions of their request for interest.

With respect to the three earlier months (December 2006, March 2007, and April 2007), the plaintiffs had the ability and ample opportunity to submit records showing the amount of hours for which J&A owed contributions, as well as proof of the date of the late payment of such contributions as a basis for establishing the amount of interest to which they are entitled. They did not do so before the original deadline for submissions that I established – despite the fact that J&A provided them with both the necessary reports and the late payments some 20 days before that deadline. Nor did they do so in the supplemental submission made some two months after that initial deadline. Instead, the record contains no more than counsel's affirmation that J&A paid certain contributions on a certain date. *See* Supp. Aff. ¶¶ 10, 20, 21. Although the method of proof is hardly the most reliable, I conclude that it suffices to establish to a reasonable certainty that J&A did in fact owe the contributions on which the plaintiffs base their interest calculations for the three months here at issue.

An affirmation by counsel would normally not suffice to establish the contributions that J&A owed: standing alone, counsel's assertions are "little better than allegations in the complaint, which as noted above are insufficient to establish damages." *LaBarbera v. Rockwala, Inc.*, Slip Copy, 2007 WL 3353869, at *5 (E.D.N.Y. Nov. 8, 2007) ("*LaBarbera II*") (declining to award damages based solely on counsel's affidavits) (citing *Laborers' Local Union No. 91 Welfare Fund v. Danco Construction, Inc.*, 1996 WL 189510, at *1 (W.D.N.Y. Apr. 17, 1996) (conclusory statement that certain amount is due is insufficient proof of delinquent ERISA

13

contributions)); *LaBarbera v. River Trucking & Rigging, Inc.*, Slip Copy, 2007 WL 3274777, at *4 (E.D.N.Y. Nov. 5, 2007) ("*LaBarbera I*") (plaintiff's counsel's affidavit insufficient to support claims for late charges and unpaid contributions in ERISA default action).

But while a party cannot establish the amount of contributions owed on the strength of its counsel's affirmation, that is not what the plaintiffs seek to do here – or at least, that is not how I interpret their belated submission. Despite the absence of any documentary evidence of the payment itself, the affirmation by plaintiff's counsel *does* suffice to show that J&A made certain payments on June 6 and June 27, 2007, and that J&A described those payment as corresponding to the contributions for the months of December 2006 and March and April 2007. Having accepted the latter proposition, the court can reasonably infer that J&A's conduct amounts to an admission that the amounts so paid were in fact the contributions it owed for those months.

Such reasoning suffices to establish the amounts owed and the dates for which interest on those amounts should be calculated. On that basis, I have reviewed the plaintiffs' calculations and conclude that they are correct. I therefore recommend that the court award a total of $421.16 in interest on late-paid contributions, consisting of $278.90 for contributions for December 2006, $78.06 for contributions for March 2007, and $64.20 for contributions for April 2007.

### 3. Additional Damages

In addition to an award of delinquent contributions and interest, ERISA also provides for an award in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]." 29 U.S.C. § 1132(g)(2). The Trust Agreement provides for such "additional damages" in the maximum allowable amount of twenty percent of unpaid

contributions. Trust Agreement § 3(d)(2). The plaintiffs seek the following amounts under that provision: $1,156.32 for October 2006; $1,030.85 for November 2006; $895.24 for December 2006; $1,101.43 for January 2007; $902.05 for March 2007; $927.37 for April 2007; $1,271.95 for May 2007; and $1,271.95 for June 2007. As explained above, I conclude that the defendants have not established any damages for May and June of 2007; and as a result I also conclude that they have not established their entitlement to the additional damages amounts they seek for those months. Their submissions do suffice as to the remaining months, and I therefore recommend that the court award a total of $6,013.26 in additional damages.

4.    Attorneys' fees

The plaintiffs seek reimbursement of $8,027.84 in attorneys' fees – $4,047.34 for work performed through May 31, 2007 (the date the plaintiffs filed their original default motion papers), and $3,980.5 for work performed from May 31, 2007 through September 6, 2007 (the date the plaintiffs filed their supplemental papers). The relevant statutory provision makes an award of reasonable attorneys' fees obligatory, not discretionary. *See* 29 U.S.C. §§ 1132(g)(2), 1145; *LaBarbera v. Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). Although "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness[,]" it has become so entrenched in the case law that its use is still permitted, if only

as a convenient shorthand.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117 & n.4 (2d Cir. 2007).  I use the term here only for such ease of reference, and without the artificial limitations that the court rejected in *Arbor Hill*.

District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award.  *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  I therefore proceed to examine the reasonableness of both the hourly rates at which the plaintiffs' attorneys seek to be compensated and the number of hours for which they seek reimbursement.  As explained below, I conclude that the court should reduce each in calculating its award of attorneys' fees in this case.

a.    Hourly Rates

The plaintiffs ask for an award of fees based on variable hourly rates for each of the attorneys who worked on this case and for the work of a paralegal.  Specifically, attorney Avram H. Schreiber ("Schreiber") – a partner in the law firm that represents the plaintiffs – bills his work at the hourly rate of $275 for some work and $300 for the remainder; associate attorney Cristina Cruz ("Cruz") charges four different hourly rates ranging from a low of $70 to a high of $225; and paralegal Denise Dees ("Dees") charges hourly rates of $70 for some tasks and $80 for others.  The plaintiffs have provided no explanation for the variations in each professional's rates; I infer from their billing records that their counsel decided to increase all hourly rates starting in May 2007, but the reason for the variations in Cruz's charges is not apparent.

I conclude that the rate at which Schreiber seeks to be compensated is unreasonably high. As the court in *Arbor Hill* made clear – admittedly in the context of applying a different fee-shifting statute – the ultimate task in considering a reasonable hourly rate is to determine, under all of the circumstances, "the rate a paying client would be willing to pay." 493 F.3d at 117. In this context, I am persuaded that a paying client would be unwilling to pay an hourly rate of $275 or higher for the services Schreiber has rendered here. Of particular relevance to that determination is that plaintiffs in several of the many similar ERISA cases decided recently in this district have not even requested such high rates of reimbursement, but have instead asked for no more than $210 per hour. *See, e.g., Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund and 401(k) Savings Plan, et al. v. Dan Yant, Inc., et al.*, 2007 WL 3036759, at *9 (E.D.N.Y. Oct. 16, 2007) (adopting recommendation in ERISA contributions case to accept as reasonable law firm partner's proposed hourly rate of $210); *Finkel v. Stan Electric, Co.*, docket no. 06-CV-1315 (NG) (JO), Report and Recommendation at 12 (E.D.N.Y. Aug. 31, 2007) (recommendation in ERISA contributions case – later adopted by district court – to accept as reasonable hourly rate of $200 proposed by attorney admitted to practice in 1999). Although law firm partners performing other kinds of work can and do command higher hourly rates, I see no reason why a paying client would agree to pay an hourly rate of $275 or more for the kind of work at issue here, particularly where other specialists in the same kind of work who regularly practice in this district charge significantly less.

Similarly, I recognize that Schreiber himself has previously succeeded in requesting, under similar circumstances, an hourly rate of $275. *See LaBarbera v. Andrew's Trucking*, 2007

WL 4224631, at *5 (E.D.N.Y. Nov. 26, 2007) ("*LaBarbera III*"); *LaBarbera II*, 2007 WL 3353869, at *5; *LaBarbera I*, 2007 WL 3274777, at *4; *King v. STL Consulting, LLC*, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006).  In none of the cited cases, however, did the court address *Arbor Hill*, which clarified the standard for determining a reasonable hourly rate.  Thus, as far as I am aware, no court has yet had occasion to consider whether Schreiber's proposed rate would meet the "paying client" test rather than simply fall within the range previously approved in similar cases.  I intend no disrespect for counsel in this case – nor indeed any disagreement with the decisions in the cases cited above – in concluding that in light of *Arbor Hill* and the circumstances described above, past practice is no longer a sufficient basis for requiring a defendant to subsidize the plaintiffs' choice of counsel who charges more than other similarly situated attorneys in the same field of practice in this district.  I therefore respectfully recommend reducing Schreiber's hourly rate to $210 per hour.

Cruz is a junior attorney who was admitted to practice in 2005.  *See* Aff. ¶ 34.  The proposed hourly rates of $70 and $80 for some of her tasks seem eminently reasonable.  The proposal that she be compensated at hourly rates of $200 or $225 for other tasks does not, and the plaintiffs have done nothing to explain why an associate performing the kind of work at issue here could command such fees from a paying client.  Junior attorneys with Cruz's level of experience are typically compensated at hourly rates ranging from $100 to $150, *see King*, 2006 WL 3335115, at *7 (collecting cases in this district), and I am aware of no circumstances suggesting that a paying client would balk at such rates.  I therefore recommend reducing Cruz's fee for tasks billed at $200 per hour or higher to an hourly rate of $125.  In fairness, I must also consider that the firm for which Cruz works would not bill her work for certain tasks at the

discounted hourly rates of $70 and $80 if it could not also charge the higher rates it seeks for

other tasks; as a result, I recommend compensating all of Cruz's work at the hourly rate of $125.

Similarly, the $80 hourly rate that the plaintiffs seek for some of paralegal assistant

Dees's work is slightly above the $70 hourly rate for such services that is normally approved in

this district, *see id*., and I see no reason why a paying client would agree to pay more.  *See King*,

2006 WL 3335115, at *7.  Absent any explanation for the higher rate, I recommend that the court

reimburse the plaintiffs for her work at a uniform hourly rate of $70.

> b.      Hours Expended

A fee applicant bears the burden of demonstrating the hours expended and the nature of

the work performed, preferably through contemporaneous time records that describe with

specificity the nature of the work done, the hours expended, and the dates.  *New York State Ass'n*

*for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  Inadequate

documentation is grounds for reduction of a fee award.  *Hensley v. Eckhart*, 461 U.S. 424, 433

(1983); *Levy v. Powell*, 2005 WL 1719972, at *6 (E.D.N.Y. Jul. 22, 2005).  Having reviewed the

plaintiffs' submissions in this regard I am satisfied that they sufficiently document the number of

hours their attorneys have billed.  *See* Aff. Ex. I; Supp. Aff. Ex. B.  But while the hours are

adequately documented, I conclude that they are not entirely justified.

The billing records before me reveal some duplication of efforts, as well as significant

time charges for calculations that should take a matter of minutes and other tasks for which the

time charges appear somewhat greater than reasonably necessary.  *Cf. Finkel*, docket no. 06-CV-

1315 (NG) (JO), Report and Recommendation at 12 (E.D.N.Y. Aug. 31, 2007) (approving

request for fees in ERISA contributions case based on only 1.7 hours of attorney work and 7.2

hours of paralegal assistant work).  One acceptable method for "trimming the fat" from a fee application in such circumstances, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed.  *In re "Agent Orange" Products Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir.1987).  Under the circumstances of this case, I recommend an overall reduction by ten percent of the number of hours for which the plaintiffs may demand reimbursement from J&A.  Specifically, I propose reducing attorney Schreiber's hours from 1.7 to 1.53, reducing attorney Cruz's hours from 39.12 to 35.21, and reducing paralegal assistant Dees's hours from 3.3 to 2.97.

c.    <u>Total Reimbursement</u>

Based on the recommendations set forth above, I respectfully recommend that the court award a total of $4,930.45 in attorneys' fees, representing $321.30 for the work of attorney Schreiber (1.53 hours at an hourly rate of $210), $4,401.25 for the work of attorney Cruz (35.21 hours at an hourly rate of $125), and $207.90 for the work of paralegal Dees (2.97 hours at an hourly rate of $70).

5.    <u>Other Litigation Costs</u>

The plaintiffs seek reimbursement of a total of $952.75 in costs.  Of that amount, $112.75 is attributable to miscellaneous fees that I conclude are adequately described and documented and should be awarded.  *See* Aff. Ex. I; Supp. Aff. Ex. B.  However, the plaintiffs have mistakenly double billed for the $350 filing fee and the $65 fee claimed for a process server.  *Compare* Aff. ("Statement for Judgment") *with* Aff. Ex. I.  The plaintiffs should be compensated for the $350 filing fee (once), but not the process server fee as they have provided neither a receipt nor any

other proof to substantiate that charge. In sum, I recommend an award of litigation costs in the amount of $462.75.

C.   Injunctive Relief

The plaintiffs also seek injunctive relief pursuant to ERISA. Specifically, they ask the court to grant two orders: one requiring J&A to submit to an audit of its books and records (although the plaintiffs do not specify any time frame for such an audit); and a second to enjoin J&A, its directors, officers, agents, and representatives, "from violating the terms of [the CBA] or successive Collective Bargaining Agreements and [sic] Declaration of Trust ...." Complaint ¶¶ 25, 26e. I address each request in turn.

1.   Audit

In an action to enforce section 1145 of ERISA, a court shall award, in addition to certain categories of monetary damages, "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). That relief "may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." *Cement and Concrete Workers District Council Welfare Fund v. Azzarone Contracting Corp.*, 2007 WL 2712314, at *5 (E.D.N.Y. Sept. 13, 2007) (quoting *Mason Tenders Dist. Council Welfare Fund v. A.G.I., Inc.*, 2005 WL 1565831, at *4 (S.D.N.Y. June 8, 2005)). Here, the Trust Agreement allows the plaintiffs to audit J&A's books and records "at any time" in connection with J&A's obligation to submit contributions to the Funds. Trust Agreement Art. IX § 1(b)-(d).[6]

---

[6]  The Trust Agreement Penalty Provision also provides for an audit of an employer's books and records – when an employer fails to submit required contribution reports – as an alternative to applying the formula upon which the plaintiffs have relied to determine unpaid contributions for

As a result of J&A's default, I must accept as true the plaintiffs' allegation that J&A has refused to cooperate in an audit of its books and records. *See* Complaint ¶ 26 (J&A has failed "to allow audits and examinations to verify amounts due"); Aff. ¶ 38 (J&A's "continued refusal ... to allow an audit seriously prevents the Plaintiffs-Trustees from assuring that all fund beneficiaries are receiving proper eligibility and pension credits."). By the terms of the Trust Agreement, that allegation – taken together with the plaintiffs' allegations regarding unpaid contributions – is sufficient to require J&A to submit to an audit, and I conclude that such relief is appropriate pursuant to section 1132(g)(2)(E) of ERISA. Should the court order the relief that I now recommend, the scope of the audit should be limited to "[p]ertinent books and records" as defined by Article IX § 1(d) of the Trust Agreement. Moreover, considering that J&A has to this point submitted the required reports and contributions for all but the months of May and June of 2007, *see* Aff. ¶¶ 22, 23, 31 & Ex. E; Supp. Aff. ¶¶ 10, 19-21, the plaintiffs have demonstrated a need only for an audit of the contributions due for those two months.

I therefore respectfully recommend that the court order J&A to permit and cooperate in an audit of its books and records, subject to the limitations set forth above. I further recommend that, within thirty days of the completion of the audit, the court allow the plaintiffs to adduce proof of the amount of unpaid contributions owed to them by J&A for the months of May and June of 2007, and to petition the court to amend the judgment to reflect any additional award of damages and prejudgment interest that might be appropriate.

─────────────────────────

the months of May and June of 2007. Trust Agreement Art. IX § 1(e). I have already determined that the plaintiffs have not taken the steps necessary to trigger the Trust Agreement Penalty Provision and I therefore do not – and need not – rely on that provision in making the instant recommendation; Art. IX § 1(d) of the Trust Agreement is a sufficient basis upon which to order the audit that I now recommend.

## 2. Permanent Injunction

The plaintiffs seek a permanent injunction that would bar J&A "from any further or future violations of this or subsequent Collective Bargaining Agreements with [the Union], as such agreements apply to the obligations of Defendant to Plaintiff herein." Complaint ¶ 26. Where, as here, the defendant is in default, the court may issue an injunction provided that the plaintiffs demonstrate (1) that they are entitled to injunctive relief under ERISA, and (2) that they otherwise satisfy the requirements for an injunction. *Cement and Concrete Workers*, 2007 WL 2712314, at *6 (citing *LaBarbera v. David Liepper & Sons, Inc.*, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (citing *King v. Nelco Indus., Inc.*, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996))). The plaintiffs have plainly satisfied the first requirement; they seek to enforce provisions of the CBA, the Trust Agreement, and the High-Rise Agreement, and to prevent future violations of those collectively bargained agreements. *See* 29 U.S.C. § 1132(a)(3) (authorizing fiduciaries of a benefit plan to bring an action (A) to enjoin violations of the statute or of the plan, or (B) to redress such violations or to enforce any provision of the statute or the terms of the plan); *see also Cement and Concrete Workers*, 2007 WL 2712314, at *6. By virtue of its default, J&A has admitted liability and the plaintiffs have therefore achieved actual success on the merits. *See* 29 U.S.C. § 1132(g)(2) ("In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan ... (E) such other legal or equitable relief as the court deems appropriate.").

To obtain an injunction, the plaintiffs must also establish irreparable harm and the absence of an adequate remedy at law. *Cement and Concrete Workers*, 2007 WL 2712314, at *6

(citing *Ticor Tile Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)).  To that end, the plaintiffs

offer a single allegation (comprised of two short paragraphs in their Complaint) – that J&A's

failure to timely submit reports and contributions "will continue to cause irreparable damage to

the plaintiffs and the [Funds'] beneficiaries" because "[t]he financial integrity of [the Funds] and

the allocation of proper eligibility and credits to the members are actuarially determined and are

based upon the prompt and accurate contributions from employers."  Complaint ¶¶ 25, 24.  That

unsupported allegation does not establish that J&A's violations of ERISA and the relevant

collectively bargained agreements will continue, nor does it demonstrate that monetary damages

are inadequate to deter future violations.  *See, e.g., LaBarbera III*, 2007 WL 4224631, at *5

(denying permanent injunction in ERISA default action for failure to provide court with

documentation sufficient to support claim for injunctive relief); *LaBarbera II*, 2007 WL

3353869, at *6 (same); *LaBarbera I,* 2007 WL 3274777, at *4 (same); *King*, 2006 WL 3335115,

at *9 (same).  I therefore respectfully recommend that the court deny the plaintiffs' request for a

permanent injunction.

III.    Recommendation

     For the reasons set forth above, I respectfully recommend that the court enter an order

awarding the plaintiffs judgment in the amount of $11,827.62, consisting of no award of unpaid

contributions; $421.16 in interest on late-paid contributions; $6,013.26 in additional damages;

$4,930.45 in reasonable attorneys' fees; and $462.75 in other litigation costs.  I further

recommend that the court order J&A to permit and cooperate in an audit of its books and records,

subject to the previously discussed limitations, and that the court permit the plaintiffs within

thirty days of the completion of the audit to adduce proof of the amount of unpaid contributions

owed to them by J&A for the months of May and June of 2007, and to petition the court to amend the judgment to reflect any additional award of damages and prejudgment interest that might be appropriate. Finally, I recommend that the court deny the plaintiffs' request for permanent injunctive relief.

IV.     Objections

I direct the plaintiffs to serve a copy of this Report and Recommendation on defendant J&A by certified mail, and to file proof of service with the court no later than February 29, 2008. Any objections to this Report and Recommendation must be filed with the Clerk no later than March 14, 2008. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); *See* Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d. Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
       February 22, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge

25